David A. Bellon, Esq.
The Law Firm of Jeffrey Galperin
*Attorneys for Plaintiff*
148-03A Hillside Avenue
Jamaica, New York
Tel. (347) 561-3447

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★ FEB 11 2011 ★

BROOKLYN OFFICE

**CV11-0709**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

**LUISPADILLA**

Plaintiff,

v.

**BANK OF AMERICA, N.A., INC., UNIVERSAL AMERICAN MORTGAGE COMPANY, LLC, UNIVERSAL AMERICAN MORTGAGE COMPANY OF CALIFORNIA, RESIDENTIAL PROPERTY LENDERS, LENNAR HOMES INC., MORTGAGE ELECTRONIC REGISTRATIONS SYSTEMS, INC., BRITE INVESTMENT REALTY F/KA ERA BRIGHT INVESTMENT REALTY, INC., FIDELITY NATIONAL TITLE COMPANY,**

**"XYZ, CORP." (SAID NAME BEING FICTITIOUS, IT BEING THE INTENTION OF PLAINTIFF TO DESIGNATE ANY PARTIES, CORPORATIONS OR ENTITIES, IF ANY, HAVING OR CLAIMING AN INTEREST OR LIEN UPON THE MORTGAGE PREMISES.**

Defendants

**SUMMONS ISSUED**

**COMPLAINT**

**MATSUMOTO, J.**

**BLOOM, M.J**

Plaintiff, **LUIS PADILLA,** by and through his attorney, David A. Bellon, Esq., says of Defendants **BANK OF AMERICA, N.A., INC., UNIVERSAL AMERICAN MORTGAGE COMPANY, LLC, UNIVERSAL AMERICAN MORTGAGE COMPANY OF CALIFORNIA, RESIDENTIAL PROPERTY LENDERS, LENNAR HOMES INC., MORTGAGE ELECTRONIC REGISTRATIONS SYSTEMS, INC., FIDELITY NATIONAL TITLE COMPANY,** and **"XYZ, CORP** hereby alleges a **Complaint for:**

1. Fraud
2. Forgery
3. Steering
4. Undue Influence
5. Mistake

6.  Intentional misrepresentation
7.  Negligent misrepresentation
8.  Fraudulent concealment
9.  Violations of Truth-In- Lending Act
10. Violations of Real Estate Settlement Practices Act
11. Violations of New York, California,  and Florida State Statutes
12. Excessive Loan Closing Fees
13. Over Leveraging
14. Quite Title
15. Violations of business and professions codes
16. Injunctive relief
17. Violations of Fair credit reporting act

## SUMMARY OF ACTIONS

1.   This a predatory lending case involving statutory fraud, common law fraud, forgery, collusion, deceptive, unlawful, misrepresentation, unfair residential real estate lending practices, as well as violations of New York, California,  and Florida State Statues on consumer/Plaintiff, Luis Padilla, by Defendants. By this complaint, Plaintiff seeks rescission of his predatory loan, monetary, and statutory damages for Defendants' violations of New York, California, and Florida Business and Professional Codes, statutory and contractual attorneys' fees, and an order quieting fee simple title of Plaintiff's property to him. By this complaint Plaintiff also seeks injunctive relief against Defendants, enjoining mortgage payment demands and any cross-claim for foreclosure on Plaintiff's property.

## PARTIES, JURISDICTION, AND VENUE

2.   Plaintiff, Luis Padilla resides in New York, County of Queens, and State of New York.

3.   Defendant **BANK OF AMERICA, N.A., INC.,** is an organization organized and existing under the laws of the State of California and with a service of process address at 101

S. Tryon Street, Charlotte, NC  28255 and all times herein mentioned did business in the County of Queens and State of New York.

4.       Defendant **UNIVERSAL AMERICAN MORTGAGE COMPANY, LLC** (**"UNIVERSAL"**) is an organization organized and existing under the laws of the State of Florida and with a corporate having a corporate address of 760 NW 107 Ave. Ste 201 Miami, Florida 33172 and an address for service of process at Ct Corporation System, 111 Eighth Avenue, New York, New York, 10011 and all times herein mentioned did business in the County of Queens and State of New York and was, at the time of the loan transaction alleged herein, a licensed real estate broker and/or a licensed residential mortgage lender. Plaintiff is further informed and believes and thereon alleges that defendant **UNIVERSAL AMERICAN MORTGAGE COMPANY OF CALIFORNIA** (**"UNIVERSAL CALIFORNIA"**) under its residential mortgage license provide brokerage services to home loans borrowers, including Plaintiff.

5.       Defendant **UNIVERSAL AMERICAN MORTGAGE COMPANY OF CALIFORNIA** is an organization organized and existing under the laws of the State of California having a corporate address of 760 NW 107 Ave. Ste 201 Miami, Florida 33172 and a service of process Address at Ct Corporation System, 111 Eighth Avenue, New York, New York, 10011 and all times herein mentioned did business in the County of Queens and State of New York and was, at the time of the loan transaction alleged herein, a licensed real estate broker and/or a licensed residential mortgage lender. Plaintiff is further informed, believes, and thereon alleges that defendant **BANK OF AMERICA, N.A.,** As Successor In Interest To Countrywide Home Loans, Inc., under its residential mortgage license provided brokerage services to home loans borrowers, including Plaintiff.

6.   Plaintiff is informed and believes and thereon alleges Defendant **LENNAR HOMES INC.**, is a home building company and organized and existing under the law of the State of Florida having a corporate address of 730 NW 107 Ave., Suite 400, Miami Florida 33172 and at all times herein did business in the county of Miami State of Florida. Plaintiff is further informed and believed and thereon alleges, the Lennar Corp. has identified 400 homes it built in Florida as having been constructed with defective Chinese drywall.

7.   Plaintiff is further informed and believes and thereon alleges that Defendant **BRITE INVESTMENT REALTY F/KA BRITE INVESTMENT REALTY F/KA ERA BRIGHT INVESTMENT REALTY, INC.,** is a corporation organized and existing under the laws of the State of Florida having corporate offices at 5833 Coral Way Miami, Florida 33155.

8.   Plaintiff informed and believes and thereon alleges defendant **RESIDENTIAL PROPERTY LENDERS,** is a corporation organized and existing under the law of State of Florida and all times herein mentioned did business in the county of Queens, State of New York and Miami County and state of Florida.

9.   Plaintiff is informed and believes that defendant **MORTGAGE ELECTRONIC REGISTRATIONS SYSTEMS, INC.,** is a corporation organized and existing under the laws of the State of California.

10.   Plaintiff does not know the names or true capacities of defendants identified as **"XYZ, CORP."** all persons Unknown Claiming Any Legal or Equitable Rights, Title, Estate, Lien or Interest in the property described in the complaint and adverse to Plaintiff's title, or any present security interest and/or cloud against Plaintiff's title, and DOES 1 thought 50, inclusive, herein, and therefore, sues these Defendants by fictitious name. The fictitious defendants are in some manner liable to Plaintiff, or claim some rights, title or interest of

Plaintiff or both.   Plaintiff will amend this complaint to allege the true names, interest and rights and capacities of said Defendants when ascertained.

11.   Plaintiff informed and believes and therefore alleges all times therein mentioned each of the Defendants were the agents, servants, or employees of each of the remaining defendants, and therefore approved, ratified or affirmed the acts and conduct of each other defendants or its officer or managing  agents.

12.   Each and every reference to Defendants in this complaint is intended and shall be deem and construe to refer to all Defendants named and unnamed including the fictitious defendants against whom a cause of action is brought.

13.   This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1332 (a) (1) and the events and transactions which form the basis of this complaint occurred in the county of Queens and State of New York and within this judicial district and the amount in controversy exceeds $75,000.00.

14.   Venue is proper in this District based upon Diversity, in that Plaintiff is domiciled in the State of New York and the Defendants' places of incorporation are in States other than New York respectively, Title 12 USC, Chapter 38; Jurisdiction, Title 12 Regulation Z, Part 226.1 (c) (3), Title 24 CFR, Regulation X, Part 3500 and *Title 12 USC § 2614*, the Real Estate Procedures Settlement Act (hereinafter "RESPA") and *Title 28 USC § 1367*, and Section 131(g) of the Truth in lending Act (15 USC § 1641) relative to any New York State Claims. The United States District Court for the District of New York has subject matter jurisdiction over the stated claims, and proper venue is within this Honorable United States District Court.

## ALLEGATIONS COMMON TO ALL COUNTS

### The Nature of Predatory Lending

15.   There is no uniformly accepted definition of predatory lending. However, the United State Department of Housing and Urban Development has defined predatory lending as involving deception of fraud, manipulation of borrowers through aggressive sales tactics or taking unfair advantages of borrower's lack of understanding about loan terms. Curbing Predatory Home Mortgage Lending (June 2000.) (HUD Report, at 1) According to HUD, "[t]hese practices are often combined with loan terms that alone or in combination are abusive or make the borrower more vulnerable to abusive practices". *Id.*

16.   Predatory Lenders often target homeowners who have substantial equity in their homes.

17.   HUD and the United States General Accounting Office ("GAO") has identified various lending practices including:

        a) Engaging in aggressive, high pressure, and/or misleading sales tactics;

        b) Lending without regards to borrower's ability to repay;

        c) Imposing excessive prepayment penalties that make prepayment difficult if not impossible;

        d) Offering to lend mortgage moneys to potential borrowers at favorable terms and then, at closing, presenting loan documents with higher interest rates, points and others charges than were originally disclosed ("bait and switch")

e) Failing to make accurate disclosure of points, penalties, interest rates, and annual percentages rates, monthly payments, total loan amounts, and third party cost;

f) Falsifying loan documents, including but not limited to inflating borrowers' true income on loan applications;

g) Charging excessive fees, points and interest rates unrelated to borrowers' credits/risk profile ("packing");

h) Misleading borrowers about their credit/risk profile to steer borrowers to high cost loans not justified by borrowers' true credit/risk profile;

i) Misleading borrowers about their credit/risk profile to steer borrowers to deposit higher down payments and not justified by borrowers' true credit/risk profile

j) Making secured loans so high in relation to the true value of borrowers' property such that the resulting debt-to-value ratio traps borrowers into a loan;

k) Inflating or falsifying property appraisals to justify the amount of loans. HUD Report, at 2; Federal and State Agencies Face Challenges in Combating Predatory Lending  (January 2004, GAO Report at 3-4, 18 19);

18.   Loan brokers, such as Defendant **RESIDENTIAL PROPERTY LENDERS** also victimized borrowers with predatory practices.  A predatory loan broker acts as the agents of the lender but abandons his fiduciary duties to the borrowers. The predatory loan broker "preys" on borrowers to strip as much money in fees, costs, and commissions as possible

from the equity in property, as Defendants **UNIVERSAL** and **UNIVERSAL AMERICAN MORTGAGE COMPANY OF CALIFORNIA** did in this case. Predatory lenders engage in the same conduct, acting in concert with loan brokers and/or adopting a closed-eyed posture to predatory loan brokers' fraudulent activities.

19.   Plaintiff is informed and believes and thereon alleges defendants engaged in the foregoing predatory practices in connection to the loan made to Plaintiff.

## THE SECONDARY LOAN MARKET, THE SECURITIZATION OF LOANS, AND MORTGAGE BACKED SECURITIES

20.   Over the years, the residential loan business evolved from one in which lenders originated loans for retention in their own portfolios to one in which lenders originated loans for resale into the secondary mortgage market.  Loan are sold by the "originating lenders" (for purposes of this complaint, "originating lenders" refers  to the named lenders on a borrower's promissory note, although such named lenders are often nominal only, never actually providing funds for a loan) into the secondary mortgage market, primarily in the form of securities known as Mortgage Backed Securities.  ("MBS").

21.   The process for creating an MBS begins when the originating lender sells, or pre-sells a borrower's note and the security agreement for the note before it is consummated (a Mortgage or Mortgage Note) to a third–party arranger, generally  an investment bank or other financial institution, who packages mortgage loans – generally thousands of separated loans - into a pool and then transfers the mortgage loans to a trust  (the "MBS trust") that issues securities to investors typically large institutional investors such as pensions plans, insurance companies, or hedge funds, collateralized by the pool of loans.  The MBS Trust purchases the loan pool and acquires the right to borrower's loan payments.  The MBS Trust

Finances the purchase this pool with its investors' insurance proceeds.  The Borrowers' monthly payments, now funneled into the loan pool are used to make monthly interest and principal payments to the investors in the MSB Trust.  In order to qualify as an MBS under federal securities law (15 USC Section 78 (c) (a) (41)), the MBS must be rated  in one of the two highest rating categories by at least one nationally recognized statistical rating organization, such as Standard & Poors, Moody's, or Fitch. The accuracy of said organization's credit ratings as well as the integrity of the ratings process as whole, has been seriously questioned by the SEC. *Summary Report Of Issues Identified in the … Examinations of Select Credit Rating Issues*, July, 2008.

22.   Upon the sale of the loan, the originating lender is paid the full principal amount of the loan plus additional fees based on a percentage of the loan amount.  The originating lender either transfers the responsibility to collect borrowers' monthly payments to a loan servicing company, or retains the servicing (collections) functions for an additional fee. The loan servicer remits borrowers' monthly payments to the MBS Trust. Plaintiff is informed and believes and thereon alleges that the servicing functions for plaintiff's loan were acquired by and transferred to Defendant **BANK OF AMERICA, N.A.**  and/or to one or more MBS Trust, without written notice to Plaintiff as required by Section 131(g) of the Truth in lending Act (15 USC § 1641) RESPA and California Civil Code Section 2937, and without a recorded assignment.

23.   An MBS Trust Typically issues different classes of MBS 's known as "tranches" which offer as sliding scale of coupon rates based on the level of credit protection  afforded to the security.  Credit protection is designed to shield the tranche securities from the loss of interest and principal due to a defaulting loan in the pool. The degree of credit protection is

designed to shield the tranche securities.   (Known as its "credit enhancement")   This protection is provided through several means.

24.  The primary source of credit enhancement is subordination.  This creates a hierarchy of loss absorption among the tranche securities.  For example, if MBS Trust issues securities in 10 different tranches, the first or senior tranches has nine subordinate tranches. The next highest tranches would have eight subordinate tranches and so on.  Any losses experienced by an MBS trust due to a default are first allocated to the lowest tranche, until it losses all of the principal it is due.  Then to the next lowest tranches and so on up to the capital structure.  Consequently, the senior tranche does not incur a potential loss until all the lower tranches have absorbed losses from the underlying loans.  As a result, senior tranches securities having less risk pay less interest, while lower tranche securities, bearing a greater risk of loss, pay higher interest rates.

25.  A second form of credit enhancement is over collateralization.  This exists where the principal balance of the mortgage pool exceeds the principal balance of the tranche securities issued by the MBS Trust. This excess principal creates an additional equity tranche below the lowest tranche security to absorb losses.  In the example above, the equity tranche sits below the tenth tranche security and protects it from the first losses due to a loan default.

26.  A third form of credit enhancement is excess spread.   This is when the trust's monthly interest income exceeds its monthly liabilities.  Excess spread is comprised of the amount by which the total interest received  on the underlying loans exceeds the total interest payment due to investors in the tranche securities, less administrative expenses of the MBS Trust, such as loan servicing fees, premiums due on derivatives contracts, and bond

insurance. This excess spread can be used to build up loss reserves or pay off delinquent interested payments owed to a tranche security.

27. Ultimately the monthly principal and interest paid into a loan pool must be enough to satisfy the monthly payments of principal and interest owed by a BMS tranche, and enough to cover expenses of the MBS Trust.

28. Plaintiff is informed and believes and thereon alleges that the sale of borrowers' loan from an original lender into the secondary market is and was not disclosed to borrowers.

29. Plaintiff is informed and believes and thereon alleges that the loan made to him by Defendants was sold into the secondary mortgage market, without his knowledge, in the manner alleged above.

## THE ASSIGNMENT OF LOANS TO THE MBS TRUST

30. At or about the time an MBS Trust issues securities to an investor, the originating lender typically transfers, conveys, and assigns all of its right, title, and interest in the underlying loan to the MBS Trust. In turn the MBS Trust will transfer, convey and assign some or the entire underlying loan to one or more additional MBS Trust. The assignment includes the transfer of all principal and interest due by a borrower with respect to the loan. The MBS trustee will then, with such assignment in hand execute and deliver the MBS to investors.

31. As part of the assignment, the originating lender will typically transfer and/or deliver to the MBS Trust a borrowers note, negotiated without recourse to the order of the MBS trustee by an endorsement on the note or by a separate "allonge" or deliver in blank, without endorsement or allonge, the original Mortgage or similar security instrument, together

with an assignment of the mortgage or similar security instrument. The MBS trustee will hold such documents in trust for the benefits of the investors in the MBS Trust.

32.   In lieu of actually delivering borrower's note, Mortgage, or similar security instrument, an assignment of such instrument to the MBS trustee for any loans registered in the MERS system,  the originating lender will cause the MBS trustee to be recorded as the beneficial owner of the loan pursuant to MERS' rule for electronically tracking changes in owner ships rights.

33.   Plaintiff is informed and believes and thereon alleges that all right, title, and interest in the loan he obtained from defendants was transferred, conveyed, and assigned to Defendant **BANK OF AMERICA, N.A.** and then to one or more MBS Trust.  Plaintiff is further informed and believes and thereon alleges that the actual promissory note and Mortgage he executed, when delivered to one or more MBS Trust, with or without written assignment or in the case of the note, with or without  endorsement or allonge, or, in lieu of actual delivery to an MSB Trust, Plaintiff loan, and the transfer  conveyance and assignment thereof, was registered in the MERS system pursuant to the rules of electronically tracking changes in ownerships rights, with an MSB trustee recorded in the MERS systems as the beneficial owner of Plaintiff's loan.

## GENERAL FACTUAL ALLEGATIONS

34.   Plaintiff does not have any knowledge or experience with loan practice procedures or terms beyond that of a typical homeowner who does not work in or has not studied the home loan industry. At all times herein mentioned, Plaintiff had no knowledge, information, or understanding regarding predatory lending practices.

35.   In May 24, 2006, Plaintiff purchased a single family residence located at 24212 SW 112 Court, Miami, Florida 33032 (the "Property").

36.   In December 2006, Plaintiff sought to finance the purchase of the Property through Defendant **RESIDENTIAL PROPERTY LENDERS,** who was introduced to Plaintiff via a loan broker.   At no time during the loan transaction herein did Plaintiff know or understand that Defendant **RESIDENTIAL PROPERTY LENDERS,** was also originating, though nominal only, a home loan lender.

37.   Plaintiff learned about Defendant **RESIDENTIAL PROPERTY LENDERS,** through a sign near the prospective home sight which said to contact loan broker, Carol Raul Garcia. ("Raul Garcia").   Plaintiff is informed and believes and thereon alleges that all times herein mentioned Raul Garcia worked for Defendant **RESIDENTIAL PROPERTY LENDERS.** At no time during the loan transaction alleged herein did Plaintiff have any reason to distrust Defendant **RESIDENTIAL PROPERTY LENDERS,** Raul Garcia, or any of Defendant **RESIDENTIAL PROPERTY LENDERS'S** agents or employees.   At no time during the loan transaction was Plaintiff aware of Defendant **RESIDENTIAL PROPERTY LENDERS**'s predatory and unlawful lending practices.

38.   The new home loan which Plaintiff obtained from and/or through Defendant **RESIDENTIAL PROPERTY LENDERS,** (the " **RESIDENTIAL PROPERTY LENDERS,** ") was the only first Mortgage loan which Raul Garcia or anyone associated with Defendant **UNIVERSAL** presented to Plaintiff.   At the time of the loan transaction alleged herein, Plaintiff had excellent credit with a FIC0 score of approximately 780.   Plaintiff is informed and believes and thereon alleges that his credit profile made him eligible for a variety of loan products.

39.   At the time Plaintiff applied for a loan through **RESIDENTIAL PROPERTY LENDERS,** he had the approximate monthly income of $2,600. Plaintiff so advised Raul Garcia of this fact.  Plaintiff also advised Raul Garcia of his illness and of his work limitations. Plaintiff had maintained his existing home loan payments by drawing on his retirement savings.  Plaintiff provided Defendant's with this paperwork. At the time Plaintiff applied for the **RESIDENTIAL PROPERTY LENDERS,** Loan, Raul Garcia stated to Plaintiff that Plaintiff's income, savings, his excellent credit rating, and the value of the Property were all that was necessary in order for Plaintiff to obtain the **RESIDENTIAL PROPERTY LENDERS,** Loan. The **RESIDENTIAL PROPERTY LENDERS,** Loan was not a "no documentation" loan.

40.   At Raul Garcia's request, Plaintiff signed a blank Uniform Residential Loan Application (the "Loan Application"). Plaintiff is informed and believes and thereon alleges that Raul Garcia and/or one of Defendant **RESIDENTIAL PROPERTY LENDERS,** or **UNIVERSAL's** agents or employees fabricated Plaintiff's income and expense information on the Loan Application. More particularly, Raul Garcia and/or one of Defendant **UNIVERSAL's** agents or employees falsely stated on the Loan Application that Plaintiff's total gross monthly income was $17,200 and that Plaintiff's estimated combined monthly living expenses, excluding the anticipated monthly payment on the **UNIVERSAL** Loan, was $2,549.00 The falsification of Plaintiff's Loan Application constitutes a violation of the federal Truth-In-Lending Act. ("TILA") alleged herein, Defendant **RESIDENTIAL**.

41.   As part of the loan transaction **PROPERTY LENDERS,** selected and sent an appraiser to the Property. Said appraiser valued the Property at significantly more than the existing loans on the Property. The appraisal also grossly inflated the true market value of the Property. Plaintiff is informed and believes and thereon alleges that Defendant

**RESIDENTIAL PROPERTY LENDERS,** and **UNIVERSAL** directed the appraised valuation of the Property in order to justify the amount of the **RESIDENTIAL PROPERTY LENDERS,** Loan and to increase its fees, which were based on the loan amount. Plaintiff is informed and believes and thereon alleges that the true market value of the Property is presently less than the **RESIDENTIAL PROPERTY LENDERS** Loan amount.

42.    Prior to signing the **RESIDENTIAL PROPERTY LENDERS,** Loan documents, Raul Garcia refused to meet with Plaintiff to review or to discuss the **RESIDENTIAL PROPERTY LENDERS,** Loan documents or any of the terms of said documents. Plaintiff was leaving the country and Raul Garcia placed extreme and undue pressure on Plaintiff to sign these loan documents immediately. To facilitate such immediate signing, Raul Garcia advised Plaintiff that a notary public would bring the **RESIDENTIAL PROPERTY LENDERS,** Loan documents to Plaintiff's home and that Plaintiff should execute said documents in the presence of that notary public.

43.    Plaintiff is informed and believes and thereon alleges that the **RESIDENTIAL PROPERTY LENDERS,** Loan documents which he executed were postdated by a number of days.

44.    On or about May 24, 2006, Plaintiff executed a first Mortgage (the "**UNIVERSAL** Mortgage"). The **UNIVERSAL** Loan amount was $322,350.00 (the "Loan Amount").   Copies of the **UNIVERSAL** Note and Mortgage are attached hereto, respectively, as "Exhibit A" and "Exhibit B". The **UNIVERSAL** Mortgage identifies Defendant **UNIVERSAL** as the "lender."

45.    At the time Plaintiff executed the **UNIVERSAL** Loan documents, Plaintiff did so under pressure from Raul Garcia and the notary public to do so as quickly as possible.

Plaintiff did not have, nor was he given time to review the **UNIVERSAL** Loan documents. Further, Plaintiff did not receive any copies of the **UNIVERSAL** Loan documents at the time of execution. Sometime after the close of escrow, Plaintiff finally received unsigned copies of the **UNIVERSAL** Loan documents.

46.   At no time did Defendant **UNIVERSAL**, its agents or employees of Defendant **UNIVERSAL** provide Plaintiff with a Good Faith Estimate or Closing Costs Statement, in violation of the federal Real Estate Settlement Procedures Act ("RESPA") and California *Business and Professions Code* Sections 10240 *et. seq.* At no time did Defendant **UNIVERSAL** nor any agents or employees of Defendant **UNIVERSAL** advice Plaintiff of the type or amount of fees and charges for the **UNIVERSAL** Loan, in violation of TILA and RESPA. At no time did Defendant **UNIVERSAL,** its  agents or employees advise Plaintiff of the terms of the **UNIVERSAL** Loan, other than the initial amount of the monthly payment on said loan Note, in violation of TILA and RESPA. At no time did Plaintiff and Defendant **UNIVERSAL** enter into a written brokerage agreement, in violation of Sections 50700 and 50701 of the CRMLA.

47.   Sometime after May 24, 2006, the purported date of close of escrow, Plaintiff received a Closing Settlement Statement for the **UNIVERSAL** Loan.  Said statement set forth, in a manner that was **not** clear and conspicuous, and was therefore in violation of TILA and RESPA, the fees and charges for the **UNIVERSAL** Loan.   Further note, that **UNIVERSAL** had never previously disclosed these charges and fees to the Plaintiff. From said Loan proceeds, Defendant **UNIVERSAL** was paid $4,305, for purportedly brokering and/or originating the Loan, as follows:

- underwriting fee of $200;

- flood certification fee of $15;

- application fee of $450;

- wire fee of $25;

- document preparation fee of $175;

- processing fee of $175;

- courier and messenger fee of $50;

- additional processing fee of $395; loan origination fee of $3,223.50.

In addition, unbeknownst to Plaintiff, Defendant **LENNAR HOMES INC.,** was paid a Builder's fee of $8,059.80.

48.   Plaintiff is informed and believes and thereon alleges that the foregoing fees and charges constituted undisclosed "finance charges", as defined under TILA. The failure to disclose such hidden finance charges as part of Plaintiff's cost of credit constituted a violation of TILA and RESPA.

49.   Plaintiff is informed and believes and thereon alleges that the foregoing fees and charges, including Defendant **UNIVERSAL**'s "points" (also known as the "yield spread premium"), were excessive and extraordinarily high and therefore constituted a violation of TILA. Plaintiff is further informed and believes and thereon alleges that some or all of the foregoing fees and charges didn't reflect fees and charges for genuine "settlement services" (as that term is defined in RESPA) rendered by Defendant **UNIVERSAL** or any agents or employees of Defendant **UNIVERSAL** and therefore constituted an illegal "kickback," "unearned fee," and "fee split" in violation of RESPA.

50.   Until Plaintiff received the unsigned copies of the **UNIVERSAL** Loan documents, Plaintiff did not know nor understand the material terms and conditions of the **UNIVERSAL** Loan.

51.   The **UNIVERSAL** Note and Mortgage included predatory terms and conditions which were not disclosed to the Plaintiff prior to the execution of same. The written terms and conditions of the **UNIVERSAL** Note and Mortgage were not clearly, conspicuously and accurately set forth.  They were stated in a manner so confusing as to be incomprehensible to a layperson, in violation of TILA. The relevant terms and conditions of the **UNIVERSAL** Note and Mortgage included the following:

52.   The starting monthly payment under the **UNIVERSAL** Mortgage was $3,292.29 approximately $1,200.00 more per month than the monthly payment Plaintiff was making under his current living conditions. Plaintiff was not aware and was not informed that the monthly payment was insufficient to cover the monthly interest due.

53.   Plaintiff would not have agreed to the terms and conditions of the **UNIVERSAL** Note and Mortgage, nor would he have executed said documents, had the terms and conditions of the **UNIVERSAL** Note and Mortgage been disclosed and explained to him.

54.   Plaintiff is informed and believes and thereon alleges that at or about the time he executed the **UNIVERSAL** Loan documents, or shortly thereafter, **UNIVERSAL**, without Plaintiff's knowledge, assigned, sold, or transferred the Loan to Defendant **BANK OF AMERICA, N.A.**

55.   At no time did **UNIVERSAL**, as transferor, or **BANK OF AMERICA, N.A.** and/or Defendant **MERS** notify Plaintiff in writing of such assignment, sale, or transfer, in violation of RESPA and New York, Florida, and California *Civil* Code 2937.

---

56.   Plaintiff is informed and believes and thereon alleges that Defendant **UNIVERSAL** and/or Defendant **BANK OF AMERICA, N.A.** and/or Defendant **MERS** further assigned, sold, or transferred the **UNIVERSAL** Loan to one or more MBS Trusts. Plaintiff was not provided written notice of any such subsequent assignments, sales, or transfers, in violation of RESPA, Florida, New York, and/or California *Civil* Code 2937.

57.   Plaintiff is informed and believes and thereon alleges that with regard to any assignment, sale, or transfer of the **UNIVERSAL** Note, there was no proper assignment of the Note, either by way of written endorsement, allonge, or actual delivery. Plaintiff is further informed and believes and thereon alleges that any assignment, sale, or transfer of the **UNIVERSAL** Note and Mortgage was made without any recorded assignment.

58.   Plaintiff is informed and believes and thereon alleges that notwithstanding any assignment, sale, or transfer of the **UNIVERSAL** Loan, **BANK OF AMERICA, N.A.** continued to service the **UNIVERSAL** Loan.

59.   Pursuant to TILA, any assignee, purchaser, or transferee of the **UNIVERSAL** Loan is liable for any and all claims and causes of action alleged by Plaintiff herein with regard to the **UNIVERSAL** Loan.

60.   At all times herein mentioned **UNIVERSAL** and **BANK OF AMERICA, N.A.**, as Plaintiff's agents, owed to Plaintiff a fiduciary duty of utmost care, honesty, and loyalty in the loan transaction alleged herein, including a duty of full disclosure of all material facts.

61.   Plaintiff is informed and believes and thereon alleges that at all times herein mentioned Defendants, **UNIVERSAL**, **BANK OF AMERICA, N.A.** and **XYZ Corp.**, inclusive, conspired, aided and abetted, encouraged, and knowingly gave substantial assistance to each other in accomplishing the wrongful conduct alleged herein.  These Defendants had

knowledge of and agreed to the predatory lending practices, violations of state and federal law, and other wrongdoings alleged herein, all for the purpose of injuring Plaintiff, and for the further purpose of reaping their own substantial profits.

## FIRST CAUSE OF ACTION
(Fraud - Intentional Misrepresentation Against Defendants
**UNIVERSAL,  BANK OF AMERICA, N.A.**, and **XYZ Corp.**, inclusive.)

62.    Plaintiff alleges and incorporates by reference, as though fully set forth herein, Paragraphs 1 through 61. inclusive, of this complaint.

63.    Commencing in or about May, 2006,the Defendants identified in this cause of action falsely and fraudulently represented to Plaintiff:

(a) the true terms of the **UNIVERSAL** Loan, including but not limited to the existence, type, and amount of points and other brokerage fees paid to **UNIVERSAL**, the existence and amount of the prepayment penalty, the adjustable rate terms of the **UNIVERSAL** Loan, the true interest rate on the **UNIVERSAL** Loan, the negative amortization features of the **UNIVERSAL** Loan, the unaffordable increase in monthly payments, the total loan amount, and the nature and amount of closing costs;

(b) the **UNIVERSAL** Loan satisfied generally accepted underwriting standards;

(c) the **UNIVERSAL** Loan comported with prudent lending standards;

(d) the true identity of the lender who in fact financed the **UNIVERSAL** Loan;

(e) Plaintiff's debt-to-income ratio was sufficient to justify the **UNIVERSAL** Loan;

(f) Defendant **UNIVERSAL** was the originating lender and not merely a nominal lender;

(g) the **UNIVERSAL** Loan was assigned, sold, or transferred to Defendant **BANK OF AMERICA, N.A.** or to one or more MBS Trusts;

(h) the **UNIVERSAL** Loan was not retained in Defendant **UNIVERSAL**'s loan portfolio but was pre-sold into the secondary mortgage market;

(i) the **UNIVERSAL** Loan was the only loan product available to Plaintiff;

(j) Defendant BANK OF AMERICA, N.A. acquired loan servicing functions for the **UNIVERSAL** Loan without notice to Plaintiff;

(k) Plaintiff was qualified for the **UNIVERSAL** Loan with no documentation, based only upon the appraisal of the Property, Plaintiff's FICO credit score, and Plaintiff's cash reserves;

(l) the true appraised value of the Property;

(m) the terms of the **UNIVERSAL** Loan complied with state and federal -law, including TILA and RESPA;

(n) Plaintiff had no right to rescind the **UNIVERSAL** Loan within three (3) business days of the close of escrow;

(0) there was an employment, agency, working, and conspiratorial relationship between Defendant **UNIVERSAL** and Defendant **BANK OF AMERICA, N.A.** as relates to the **UNIVERSAL** Loan;

(p) Defendant **UNIVERSAL** falsified Plaintiff's Loan Application;

(q) the fees and charges for the **UNIVERSAL** Loan were lawful and proper and did not include any hidden finance charges;

(r) the fees and charges paid to Defendant **UNIVERSAL** were lawful and proper, were not excessive, were incurred for genuine settlement services rendered, and did not constitute an illegal kickback, unearned fee, or fee

(s) Defendant BANK OF AMERICA, N.A. had the right to advance property taxes and homeowner's insurance premiums on Plaintiff's behalf without notice to Plaintiff or without his consent;

(t) amounts advanced by Defendant BANK OF AMERICA, N.A. for property taxes and homeowner's insurance would not be added to the principal amount of the **UNIVERSAL** Loan;

(u) Defendant **BANK OF AMERICA, N.A.** would rescind the impound account that it established; for

(v) the amounts necessary to cure Plaintiff's alleged default on the **UNIVERSAL** loan.

64.   The foregoing representations made by the Defendants identified in this cause of action were in fact false. When the Defendants in this cause of action made the foregoing representations, they were aware that said representations to be false. The Defendants made the foregoing representations with the intent to deceive and to defraud Plaintiff by inducing his to execute the **UNIVERSAL** Note and Mortgage.

65.   At all times during the loan process and at the time Plaintiff executed the **UNIVERSAL** Note and Mortgage, Plaintiff was ignorant of the falsity of the representations of Defendants identified in this cause of action and could not in the exercise of reasonable diligence have discovered said Defendants' fraud.

---

66.   Plaintiff would have not agreed to the **UNIVERSAL** Loan, nor would he have executed the **UNIVERSAL** Note and Mortgage, had the foregoing representations not been made.

67.   Plaintiff justifiably relied on the representations of Defendants identified in this cause of action because Plaintiff did not and does not have knowledge of or experience with home loan practice procedures or home loan terms beyond that of a typical homeowner who does not work in or has not studied the mortgage industry, because said Defendants were purportedly reputable lenders, loan brokers, and/or loan servicers, and because of Plaintiff's personal relationship with Raul Garcia.

68.   Plaintiff did not discover of the fraud of Defendants identified in this cause of action until in or about October 2010.

69.   As a proximate result of the false and fraudulent representations of the Defendants identified in this cause of action, Plaintiff has incurred general damages in a sum according to proof at trial, together with interest thereon from and after May 22, 2006, in the maximum amount allowed by law.

70.   As a further proximate result of the false and fraudulent representations of the Defendants identified in this cause of action, Plaintiff has incurred damages equal to twice the amount of the finance charges paid by Plaintiff in connection with the **UNIVERSAL** Loan, pursuant to TILA, 15 *U. S. C.* Section 1640, in a sum according to proof at trial, together with interest thereon from and after May 24, 2006, in the maximum amount allowed by law.

71.   As a further proximate result of the false and fraudulent representations of the Defendants identified in this cause of action, Plaintiff has incurred damages equal to the amount of all remaining indebtedness on the **UNIVERSAL** Loan, pursuant to TILA, 15 *U. S.*

C. Section 164 1, in a sum according to proof at trial, together with interest thereon from and after May 22, 2006, in the maximum amount allowed by law.

72.   As a further proximate result of the false and fraudulent representations of the Defendants identified in this cause of action, Plaintiff has incurred damages equal to the total amount paid by Plaintiff in connection with the **UNIVERSAL** Loan, including all payments of principal and interest and all payments of fees, charges, and points paid in connection with the **UNIVERSAL** Loan, pursuant to TILA, 15 *U.* S. C. Section 164 I, in a sum according to proof at trial, together with interest thereon from and after May 22, 2006, in the maximum amount allowed by law. As a further proximate result of the false and fraudulent representations of the Defendants identified in this cause of action, Plaintiff is entitled to statutory damages of $2,000.00, pursuant to TILA, 15 *U.* S. C. Section 1640.

73.   The Defendants' conduct constitutes a series of intentional acts committed by said Defendants with the intention of depriving Plaintiff of property or legal rights or otherwise causing Plaintiff injury. Such conduct was despicable and has subjected Plaintiff to unjust hardship in conscious disregard of his rights, so as to justify an award of exemplary and punitive damages against such Defendants, in a sum according to proof at trial.

74.   The **UNIVERSAL** Note and Mortgage provide that in the event of Plaintiff's default resulting in foreclosure procedures, the Defendants identified in this cause of action shall be entitled to reasonable attorney's fees. By virtue of *California Civil Code* Section 1'7 17, the right to attorney's fees is reciprocal, entitling Plaintiff to recover attorney's fees if he prevails in this action. Plaintiff is further entitled to reasonable attorney's fees and costs pursuant, to TILA, 15 *US.* C. Section 1640.

## SECOND CAUSE OF ACTION
(Fraud - Negligent Misrepresentation Against Defendants
**UNIVERSAL, BANK OF AMERICA, N.A.**, and **XYZ Corp.**, inclusive.)

75.    Plaintiff alleges and incorporates by reference, as though fully set forth herein, Paragraphs 1 through 88, inclusive, and Paragraphs 90 through 95, inclusive, of this complaint.

76.    The Defendants in this cause of action made false and fraudulent representations as alleged herein, and had no reasonable grounds for believing the representations were true, and made these representations with the intent to induce Plaintiff to act as alleged herein.

77.    As a proximate result of the negligent misrepresentations of the Defendants, Plaintiff has incurred general damages in a sum according to proof at trial, together with interest thereon from and after May 24, 2006, in the maximum amount allowed by law.

78.    As a further proximate result of the negligent misrepresentation of the Defendants identified in this cause of action, Plaintiff has incurred damage to his credit rating, in a sum according to proof at trial.

79.    As a further proximate result of the negligent misrepresentations of the Defendants identified in this cause of action, Plaintiff has incurred damages equal to twice the amount of the finance charges paid by Plaintiff in connection with the **UNIVERSAL** Loan, pursuant to TILA, 15 *U.S.* C. Section 1640, in a sum according to proof at trial, together with interest thereon from and after May 22, 2006, in the maximum amount of allowed by law.

80.    As a further proximate result of the negligent misrepresentations of the Defendants identified in this cause of action, Plaintiff has incurred damages equal to the amount of all remaining indebtedness on the **UNIVERSAL** Loan, pursuant to TILA, 15 *U. S.*

C. Section 164 I, in a sum according to proof at trial, together with interest thereon from and after May 22, 2006, in the maximum amount allowed by law.

81.    As a further proximate result of the negligent misrepresentations of the Defendants identified in this cause of action, Plaintiff has incurred damages equal to the total amount paid by Plaintiff in connection with the **UNIVERSAL** Loan, including all payments of principal and interest and all payments of fees, charges, and points paid in connection with the **UNIVERSAL** Loan, pursuant to TILA, 15 U.S.C. Section 1641, in a sum according to proof at trial, together with interest thereon from and after May 22, 2006, in the maximum amount allowed by law. 110. As a further proximate result of the negligent misrepresentation of the Defendants identified in this cause of action, Plaintiff is entitled to statutory damages of $2,000.00, pursuant to TILA, 15 *U. S.* C. Section 1640.

82.    The **UNIVERSAL** Note and Mortgage provide that in the event of Plaintiff's default resulting in foreclosure procedures, the Defendants identified in this cause of action shall be entitled to reasonable attorney's fees, by virtue of California Civil Code Section 17, the right to attorney's fees as reciprocal, entitling Plaintiff to recover attorney's fees if he prevails in this action. Plaintiff is further entitled to reasonable attorney's fees and costs, pursuant to TILA, 15 *U.S.* C. Section 1640.

### THIRD CAUSE OF ACTION
(Fraudulent Concealment - Against Defendants
**UNIVERSAL, BANK OF AMERICA, N.A.**, and **DOES I through 50**, inclusive.)

83.     Plaintiff alleges and incorporates by reference, as though fully set forth herein, Paragraphs 1 through 88, inclusive, and Paragraphs 90 through 95, inclusive, of this complaint.

84.     At all times herein mentioned, the Defendants identified in this cause of action owed a fiduciary duty to disclose to Plaintiff all material facts relating to the **UNIVERSAL** Loan.

85.     In promoting the **UNIVERSAL** Loan, and throughout the **UNIVERSAL** Loan process, and thereafter, the Defendants identified in this cause of action knowingly and willfully suppressed and concealed from Plaintiff material facts known to them but not to Plaintiff, including but not limited to the true terms of the **UNIVERSAL** Loan, as alleged herein; the true identity of the lender who in fact financed the **UNIVERSAL** Loan; that Plaintiff's debt-to-income ratio was insufficient to justify the **UNIVERSAL** Loan; that Defendant **UNIVERSAL** was the originating lender and not merely a nominal lender; that the **UNIVERSAL** Loan was assigned, sold, or transferred to Defendant **BANK OF AMERICA, N.A.** or to one or more MBS Trusts; that the **UNIVERSAL** Loan was not retained in Defendant **UNIVERSAL's** Loan portfolio but was pre-sold into the secondary mortgage market; that the **UNIVERSAL** Loan was not the only loan product available to Plaintiff and for which he qualified; that Defendant **BANK OF AMERICA, N.A.** acquired loan servicing functions for the **UNIVERSAL** Loan, without notice to Plaintiff; the true appraised value of the Property; that the terms of the **UNIVERSAL** Loan did not comply with state and federal law, including TILA and RESPA; that Plaintiff had the right to rescind the **UNIVERSAL** Loan within three (3) business days of the close of escrow; that there was an employment, agency, working, and conspiratorial relationship between Defendant **UNIVERSAL** and Defendant

**BANK OF AMERICA, N.A.**; that Defendant **UNIVERSAL** falsified Plaintiff's Loan Application; that the fees and charges for the **UNIVERSAL** Loan included hidden finance charges; that the fees and charges paid to Defendant **UNIVERSAL** were excessive, were incurred for settlement services not rendered, and constituted an illegal kickback, unearned fee, and fee split; the true amounts necessary to cure Plaintiff's alleged default on the **UNIVERSAL** Loan; the foreclosure consequences of Plaintiff's failure to repay the advances of Defendant **BANK OF AMERICA, N.A.** for Plaintiff's property taxes and homeowner's insurance; and the foreclosure consequences of Plaintiff's failure to fund the impound account.

86.    The Defendants identified in this cause of action intentionally suppressed and concealed the foregoing material facts from Plaintiff with the intent to deceive and to defraud Plaintiff and to induce or to execute the **UNIVERSAL** Note and Mortgage.

87.    At the time of the concealment of the material .facts alleged herein, Plaintiff was unaware of the true facts. As result of the fraudulent concealments by the Defendants, Plaintiff executed the **UNIVERSAL** Note and Mortgage, and forestalled taking any action to protect his interests. Plaintiff would not have executed the **UNIVERSAL** Note and Mortgage if all of the material terms of the **UNIVERSAL** Loan had been disclosed to him before close of escrow.

88.    As a proximate result of the fraudulent concealments of the Defendants identified in this cause of action, Plaintiff has incurred general damages in a sum according to proof at trial, together with interest thereon from and after May 24, 2006, in the maximum amount allowed by law.

89.   As a further proximate result of the fraudulent concealments of the Defendants identified in this cause of action, Plaintiff has incurred damage to his credit rating, in a sum according to proof at trial.

90.   As a further proximate result of the fraudulent concealments of the Defendants identified in this cause of action, Plaintiff has incurred damages equal to twice the amount of the finance charges paid by Plaintiff in connection with the **UNIVERSAL** Loan, pursuant to TILA, 15 *U.* S. C. Section 1640, in a sum according to proof at trial, together with interest thereon from and after May 22, 2006, in the maximum amount allowed by law.

91.   As a further proximate result of the fraudulent concealments of the Defendants, Plaintiff has incurred damages equal to the amount of all remaining indebtedness on the **UNIVERSAL** Loan, pursuant to TILA, 15 *U. S.* C. Section 164 I, in a sum according to proof at trial, together with interest thereon from and after May 22, 2006, in the maximum amount allowed by law.

92.   As a further proximate result of the fraudulent concealments of the Defendants, Plaintiff has incurred damages equal to the total amount paid by Plaintiff in connection with the **UNIVERSAL** Loan, including all payments of principal and interest and all payments of fees, charges and points paid in connection with the **UNIVERSAL** Loan, pursuant to TILA, 15 *U.S.C.* Section 1641, in a sum according to proof at trial, together with interest thereon from and after May 22, 2006, in the maximum amount allowed by law.

93.   As a further proximate result of the fraudulent concealments of the Defendants, Plaintiff is entitled to statutory damages of $2,000.00, pursuant to TILA, 15 *U.* S. C. Section 1640.

94.    The conduct of the Defendants constitutes a series of intentional acts committed by such Defendants with the intention of depriving Plaintiff of property or legal rights or otherwise causing Plaintiff injury. Such conduct was despicable and has subjected Plaintiff to unjust hardship in conscious disregard of his rights, so as to justify an award of exemplary and punitive damages against such Defendants, in a sum according to proof at trial.

95.    The **UNIVERSAL** Note and Mortgage provide that in the event of Plaintiff's default resulting in foreclosure procedures, the Defendants identified in this cause of action shall be entitled to reasonable attorney's fees. By virtue of California Civil Code Section 1717, the right to attorney's fees is reciprocal, entitling Plaintiff to recover attorney's fees if he prevails in this action. Plaintiff is further entitled to reasonable attorney's fees and costs, pursuant to TILA, 15 *U.S.C.* Section 1640.

### FOURTH CAUSE OF ACTION
(Violations of TILA - Against Defendants **UNIVERSAL, BANK OF AMERICA, N.A.,** and **XYZ Corp.**, inclusive, As to All Allegations and Remedies; Violations of TILA - Against Defendants **BANK OF AMERICA, N.A.,** **Residential Property Lenders**, **MERS**, **FIDELITY NATIONAL TITLE COMPANY**, and **XYZ Corp.**, inclusive, as to the Remedy of Rescission.)

96.    Plaintiff alleges and incorporates by reference as though fully set forth herein, Paragraphs 1 through 95, inclusive, of this complaint.

97.    The **UNIVERSAL** Loan is a "consumer credit transaction7' subject to the provisions of TILA, 15 *U. S. C.* Sections 160 1 *et* seq.

98.    Defendants **UNIVERSAL, BANK OF AMERICA, N.A.**, and **XYZ Corp.**, inclusive, violated TILA in the following respects:

(a) by falsifying Plaintiff's Loan Application;

(b) by failing to provide Plaintiff with the written disclosures required under TILA prior to the close of escrow;

(c) by failing to set forth in any **UNIVERSAL** Loan document the disclosures required by TILA clearly and conspicuously in writing;

(d) by failing to provide Plaintiff with clear, complete, and accurate disclosures regarding, among other material terms, the total finance charge, the actual amount financed, the actual annual percentage rate (which is higher than the disclosed rate), the payment schedule, the monthly payments, the consequences of negative amortization, the total payments due on the **UNIVERSAL** Loan, and the fees and charges of Defendant **UNIVERSAL**;

(e) by extending credit to Plaintiff without regard to Plaintiff's repayment ability;

(f) by extending credit to Plaintiff without regard to Plaintiff's true current and expected income, current obligations, and employment;

(g) by failing to include Defendant **UNIVERSAL**'s points and the other fees and charges paid to Defendant **UNIVERSAL** within Plaintiff's cost of credit as a finance charge to Plaintiff, thus constituting hidden finance charges;

(h) by charging Plaintiff excessive fees and charges not reasonably related to the performance of lawful or genuine settlement services, which fees and charges were thus finance charges that required full disclosure;

(i) by failing to provide Plaintiff with written notice of his right to rescind the **UNIVERSAL** Loan within three (3) business days of the close of escrow.

99.    As a proximate result of the violations of TILA by Defendants UNIVERSAL, BANK OF AMERICA, N.A., and **XYZ Corp.**, inclusive, Plaintiff has incurred general damages

in a sum according to proof at trial, together with interest thereon from and after May 24, 2006, in the maximum amount allowed by law.

100.   As a further proximate result of the violations of TILA by Defendants **UNIVERSAL**, **BANK OF AMERICA, N.A.**, and **XYZ Corp.**, inclusive, Plaintiff has incurred damages equal to twice the amount of the finance charges paid by Plaintiff in connection with the **UNIVERSAL** Loan, pursuant to TILA, 15 *U.* S. C. Section 1640,in a sum according to proof at trial, together with interest thereon from and after May 22, 2006, in the maximum amount allowed by law.

101. As a further proximate result of the violations of TILA by Defendants **UNIVERSAL**, **BANK OF AMERICA, N.A.**, and **XYZ Corp.**, inclusive, Plaintiff has incurred damages equal to the amount of all remaining indebtedness on the **UNIVERSAL** Loan, pursuant to TILA, 15 U. S. C. Section 164 1, in a sum according to proof at trial, together with interest thereon from and after December 2 1, 2006, in the maximum amount allowed by law.

102. As a further proximate result of the violations of TILA by Defendants **UNIVERSAL**, **BANK OF AMERICA, N.A.**, and **XYZ Corp.**, inclusive, Plaintiff has incurred damages equal to the total amount paid by Plaintiff in connection with the **UNIVERSAL** Loan, including all payments of principal and interest and all payments of fees, charges and points paid in connection with the **UNIVERSAL** Loan, pursuant to TILA, 15 U. S. C. Section 164 I, in a sum according to proof at trial, together with interest thereon from and after May 22, 2006, in the maximum amount allowed by law.

103. As a further proximate result of the violations of TILA by Defendants **UNIVERSAL**, **BANK OF AMERICA, N.A.**, and **XYZ Corp.**, inclusive, Plaintiff is entitled to statutory damages of $2,000.00, pursuant to TILA, 150 *U.* S. C. Section 1640.

104.  As a further proximate result of the violations of TILA by Defendants **UNIVERSAL**, **BANK OF AMERICA, N.A.**, and **XYZ Corp.**, inclusive, Plaintiff is entitled to rescind the **UNIVERSAL** Loan, including the **UNIVERSAL** Note and Mortgage, as to all the Defendants identified in this cause of action.

105.  As a further proximate result of the violations of TILA by Defendants **UNIVERSAL**, **BANK OF AMERICA, N.A.**, and **XYZ Corp.**, inclusive, Plaintiff is entitled to reasonable attorney's fees and costs, pursuant to TILA, 15 U. S. C. Section 1640.

106.  Any and all statutes of limitations under TILA are tolled as a result of the failure of Defendants **UNIVERSAL**, BANK OF AMERICA, N.A., and **XYZ Corp.**, inclusive, to comply with the requirements of TILA.

**FIFTH CAUSE OF ACTION**
(Violations of RESPA - Against Defendants **UNIVERSAL, BANK OF AMERICA, N.A.**,
and **XYZ Corp.**, inclusive, As to All Allegations and Remedies;
Violations of RESPA - Against Defendants **BANK OF AMERICA, N.A.**,
Residential Property Lenders, **MERS, Brite Realty,**
**FIDELITY NATIONAL TITLE COMPANY**, and
**XYZ Corp.**, inclusive, As to the Remedy of Rescission.)

107.  Plaintiff alleges and incorporates by reference, as though fully set forth herein, Paragraphs 1 through 106, inclusive, of this complaint.

108.  The **UNIVERSAL** Loan is a "federally related mortgage loan" subject to the provisions of RESPA, 12 U.S.C. Section 2601 *et. seq*.

109.  Defendants **UNIVERSAL**, **BANK OF AMERICA, N.A.**, and **XYZ Corp.**, inclusive, violated RESPA in the following respects:

(a) by failing to provide Plaintiff with a written Good Faith Estimate of Closing Costs Statement;

(b) by failing to provide Plaintiff with clear, complete, and accurate disclosures regarding, among other material terms, the total finance charge, the actual amount financed, the actual annual percentage rate (which is higher than the disclosure at close), the payment schedule, the monthly payments, the consequences of negative amortization, the total payments due on the **UNIVERSAL** Loan, and the fees and charges of Defendant **UNIVERSAL**;

(c) by failing to provide Plaintiff with written disclosure of the type or amount of fees and charges of the **UNIVERSAL** Loan;

(d) by failing to include Defendant **UNIVERSAL**'s points and other fees and charges paid to Defendant **UNIVERSAL** within Plaintiff's cost of credit as a finance charge to Plaintiff, thus constituting hidden finance charges;

(e) by Defendant **UNIVERSAL** taking fees not reasonably related to the performance of lawful or genuine settlement services, thus constituting an illegal kickback, unearned fee, and fee split;

(f) by failing to provide Plaintiff with other potential lenders;

(g) by failing to notify Plaintiff in writing that the **UNIVERSAL** Loan was assigned, sold, or transferred to Defendant **BANK OF AMERICA, N.A.** and/or to one or more MBS Trusts;

(h) by failing to notify Plaintiff in writing that the loan servicing functions on the **UNIVERSAL** Loan were transferred to Defendant **BANK OF AMERICA, N.A.**;

(i) by imposing impound amounts in excess of that permitted under RESPA;

(j) by refusing and failing to credit Plaintiff's account, either to principal or interest, with Plaintiff's payment;

(k) by failing to respond to Plaintiff's qualified written request or to act to resolve Plaintiff's qualified written request in the time allowed, or at all;

(1) by reporting Plaintiff's alleged default to credit reporting agencies while Plaintiff's qualified written request remained unresolved;

(m) by failing to provide Plaintiff with a closing statement that clearly itemized the fees and charges imposed on Plaintiff.

110.    As a proximate result of the violations of RESPA by Defendants **UNIVERSAL**, **BANK OF AMERICA, N.A., and XYZ Corp.**, inclusive, Plaintiff has incurred general damages in a sum according to proof at trial, together with interest thereon from and after May 24, 2006, in the maximum amount allowed by law.

111.    As a further proximate result of the violations of RESPA by Defendants **UNIVERSAL, BANK OF AMERICA, N.A., and XYZ Corp.**, inclusive, Plaintiff has incurred damages equal to three times the amount of all fees and charges for settlement services paid by Plaintiff in connection with the **UNIVERSAL** Loan, pursuant to RESPA, 12 U.S.C. Section 260'7, in a sum according to proof at trial, together with interest thereon from and after May 24, 2006, in the maximum amount allowed by law.

112.    As a further proximate result of the violations of RESPA by Defendants **UNIVERSAL, BANK OF AMERICA, N.A.** and **XYZ Corp.**, inclusive, Plaintiff is entitled to statutory damages of $1,000.00, pursuant to RESPA, 12 U.S. C. Section 2605.

113.    As a further proximate result of the violations of RESPA by Defendants **UNIVERSAL, BANK OF AMERICA, N.A.**, and **XYZ Corp.**, inclusive, Plaintiff is entitled to rescind the **UNIVERSAL** Loan, including the **UNIVERSAL** Note and Mortgage, as to all the Defendants identified in this cause of action.

114.   As a further proximate result of the violations of RESPA by Defendants **UNIVERSAL**, **BANK OF AMERICA, N.A.**, and **XYZ Corp.**, inclusive, Plaintiff is entitled to reasonable attorney's fees and costs, pursuant to RESPA, 12 U.S.C. Section 2605.

115. Any and all statutes of limitations under RESPA are tolled as a result of the failure by Defendants **UNIVERSAL**, **BANK OF AMERICA, N.A.**, and **XYZ Corp.**, inclusive, to comply with the requirements of RESPA.

### SIXTH CAUSE OF ACTION
(Violations of State Statutes - Against Defendants **UNIVERSAL AMERICAN MORTGAGECOMPANY, LLC, BANK OF AMERICA, N.A.**, and **XYZ Corp.**, inclusive, As to All Allegations and Remedies; Violations of State Statutes - Against Defendants **BANK OF AMERICA, N.A., RESIDENTIAL PROPERTY LENDERS, MERS, BRITE REALTY , FIDELITY NATIONAL TITLE COMPANY**, and **XYZ Corp.**, inclusive, As to the Injunctive Remedy)

116. Plaintiff alleges and incorporates by reference, as though fully set forth herein, Paragraphs 1 through 115, inclusive, of this complaint.

117. Defendants **UNIVERSAL**, **BANK OF AMERICA, N.A.**, and **XYZ Corp.**, inclusive, violated the provisions of California *Business and Professions Code* Section 1024 et. seq, by failing to deliver to Plaintiff within three business days after the receipt of Plaintiff's Loan Application a written statement containing an estimate of the maximum costs and expenses of the **UNIVERSAL** Loan, which maximum costs and expenses are set forth in Florida, New York, and California *Business* and *Professions Code* Section 1024 1.

118. Defendants **UNIVERSAL**, **BANK OF AMERICA, N.A.**, and **XYZ Corp.**, inclusive, violated the CRMLA in the following respects:

(a) by failing to enter into a written loan brokerage agreement with Plaintiff containing the information required by Section 50701 of the CRMLA, which

agreement must include an explicit statement that said Defendants were acting as the agent of Plaintiff in providing brokerage services, that said Defendants owed a fiduciary duty to Plaintiff, a statement and identification of any agency relationships with third persons, a description of services to be performed, a description of the brokerage services to be rendered and a good faith estimate of the fees therefore, and a statement of the conditions under which Plaintiff would be obligated to pay for brokerage services rendered;

(b) by accepting fees at the close of escrow that were not disclosed to Plaintiff

(c) by inducing Plaintiff to execute the Loan Application in which blanks were left to  completed after execution;

(d) by engaging in fraudulent home mortgage underwriting practices;

(e) by violating California *Business and Professions Code* Section 17200 et. esq., as more fully alleged herein, by knowingly concealing material information regarding the **UNIVERSAL** Loan;

(f)by engaging in fraudulent and dishonest conduct with respect to dealings with Plaintiff.

119.    Defendants **UNIVERSAL**, **BANK OF AMERICA, N.A.**, and **XYZ Corp.**, inclusive, violated California *Civil Code* Section 293'7, by failing to notify Plaintiff in writing of the assignment, sale, or transfer of the **UNIVERSAL** Loan to Defendant **BANK OF AMERICA, N.A.** and/or Defendant U .S. Bank, and by failing to notify Plaintiff in writing of the assignment, sale, or transfer of the **UNIVERSAL** Loan to one or more MBS Trusts.

120.    Defendants **UNIVERSAL**, **BANK OF AMERICA, N.A.**, and **XYZ Corp.**, inclusive, violated the provisions of California *Civil Code* Section 2932.5 by assigning, selling,

and transferring the **UNIVERSAL** Note, either by way of written endorsement, allonge, or actual delivery without any recorded assignment.

121.    All of the Defendants identified in this cause of action violated the provisions of SB 1 137, as alleged herein.

122.    As a proximate result of the violation of California *Business and Professions Code* Section 1024, *et.* (**"UNIVERSAL CALIFORNIA")**, by Defendants **UNIVERSAL, BANK OF AMERICA, N.A.**, and **XYZ Corp.**, inclusive, Plaintiff has incurred damages equal to three times the amount of the fees and charges paid by Plaintiff in connection with the **UNIVERSAL** Loan, pursuant to California *Business and Professions Code* Section10246, in a sum according to proof at trial, together with interest thereon from and after May 24, 2006, in the maximum amount allowed by law.

123.    As a further proximate result of the violations of California *Business and Professions Code* Section 1024 *et. seq* by Defendants **UNIVERSAL, BANK OF AMERICA, N.A.**, and **XYZ Corp.**, inclusive, Plaintiff is entitled to reasonable attorney fees and costs pursuant to California Business and Professions Code Section10246.

124.    As a proximate result of the violations of the CRMLA by Defendants **UNIVERSAL, BANK OF AMERICA, N.A.**, and **XYZ Corp.**, inclusive, Plaintiff is entitled to damages equal to the amount of all fees and charges paid by Plaintiff in connection with the **UNIVERSAL** Loan, pursuant to CRMLA Section 50701, in a sum according to proof at trial, together with interest thereon from and after May 22, 2006, in the maximum amount allowed by law.

125.    As a further proximate result of the violations of the CRMLA by Defendants **UNIVERSAL**, **BANK OF AMERICA, N.A.**, and **XYZ Corp.**, inclusive, Plaintiff is entitled to statutory damages of $2500.00, pursuant to CRMLA Section 50501.

126.    As a further proximate result of the violations of the CRMLA by Defendants **UNIVERSAL**, **BANK OF AMERICA, N.A.**, and **XYZ Corp.**, inclusive, Plaintiff is entitled to reasonable attorney's fees and costs pursuant to CRMLA Section 50700.

127.    As a proximate result of the violations of California Civil Code Sections 2937, 2932.5, and SB 1137,none of the Defendants identified in this cause of action have standing or the right to non-judicially foreclose on Plaintiff's Property, justifying a temporary restraining order, preliminary injunction, and permanent injunction restraining and enjoining all of the Defendants from non-judicially foreclosing on Plaintiff's Property.

## SEVENTH CAUSE OF ACTION
### (Quiet Title Against All Defendants.)

128.    Plaintiff alleges and incorporates by reference, as though fully set forth herein, Paragraphs 1through 129, inclusive, of this complaint.

129.    Plaintiff is the owner of the fee and in possession of and in control of the Property.

130.    Plaintiff obtained fee simple title  to the Property by grant deed recorded in the Official Records of Miami County, Florida.

131.    Plaintiff is informed and believes and thereon alleges that Defendants claim an interest in the Property adverse to Plaintiff's title, pursuant to which defendants seeks to non-judicially  foreclose upon the property. The claims of Defendants are without any right and

Defendants have no right, title, estate, lien, or interest in the Property, such that any attempted non-judicial foreclosure on the Property is illegal and unlawful.

132.  Plaintiff seeks a determination he holds of fee simple title to the Property free of any purported adverse claims of Defendants.

### EIGHTH CAUSE OF ACTION
(Violation of California *Business and Professions Code* Section 17200 Against Defendant **UNIVERSAL, BANK OF AMERICA, N.A.**, and **XYZ Corp**., inclusive.)

133.  Plaintiff alleges and incorporates by reference, as though fully set forth herein, Paragraphs 1 through 132, inclusive, of this complaint.

134.  The actions alleged herein of the Defendants identified in this cause of action constitute unlawful, unfair, and fraudulent business acts and practices, in violation of California *Business and Professions Code* Section 17200 *et. seq.*

135.   The actions alleged herein of the Defendants identified in this cause, of action constitute unlawful, unfair and fraudulent business acts and practices because such actions violate TILA, RESPA, the CRMLA, California *Business and Professions Code* Section 10240 *et. seq,* California *Civil Code* Sections 2937 and 2932.5, and SB1137.

136.  Plaintiff has suffered injury in fact and lost money as result of said Defendants' actions as alleged herein.

137.  The Defendants identified in this cause of action have received money and property belonging to Plaintiff and have been unjustly enriched thereby.

138.  The unlawful, unfair, and fraudulent business acts and practices of the Defendants identified in this cause of action constituted and constitute continuing course of unfair competition.

139. As a proximate result of the violation of California *Business and Professions Code* Section 17200 *et. seq* by the Defendants identified in this cause of action, Plaintiff is entitled to an order of the court enjoining said Defendants from continuing to engage in unlawful, unfair, and fraudulent business acts and practices as alleged in this complaint, pursuant to California *Business and Professions Code* Section 17203.

140. As a further proximate result of the unlawful, unfair, and fraudulent business acts and practices of the Defendants identified in this cause of action, Plaintiff is entitled to an order of the court requiring said Defendants to make full restitution of all moneys they have wrongfully obtained from Plaintiff and an order of the court requiring said Defendants to disgorge all ill- gotten revenues and/or profits obtained from the **UNIVERSAL** Loan, pursuant to New York and California *Business and Professions Code* Section 17203, together with interest thereon from and after May 22, 2006, in the maximum amount allowed by law.

### NINTH CAUSE OF ACTION
(Temporary Restraining Order, Preliminary Injunction and
Permanent Injunction Against All Defendants.)

141. Plaintiff alleges and incorporates by reference, as though fully set forth herein, Paragraphs 1 through 140, inclusive, of this complaint.

142. Defendants may seek to foreclose upon the Property pursuant to the Mortgage. For the reasons alleged herein, foreclosure on the Property is illegal, wrongful, and volatile of state and federal law.

143. Plaintiff is informed and believes and thereon alleges that Defendants may proceed with a sale of Property pursuant to the Mortgage and Notice of Default, unless and until retrained and rejoined by order of the court.

144. Foreclosure on the Property will cause Plaintiff great and irreparable injury, for which pecuniary compensation would not afford adequate relief, in that Plaintiff would suffer the loss of his home.

145. Plaintiff has no adequate remedy at law for Defendants' prospective foreclosure of his Property.

146. Plaintiff is therefore entitled to a temporary restraining order, preliminary injunction, and permanent injunction, enjoining all Defendants, their agents, attorneys, and representatives, and all persons acting in concert or participating with them, from proceeding with the non-judicial foreclosure of Plaintiff's Property, including the sale or attempted sale of Plaintiff's Property.

## TENTH CAUSE OF ACTION
### (Violations of the FCRA - Against Defendants
UNIVERSAL, BANK OF AMERICA, N.A., and XYZ Corp., inclusive.)

147. Plaintiff alleges and incorporates by reference, as though fully set forth herein, Paragraphs 1 through 146, inclusive, of this complaint.

148. Defendants **UNIVERSAL, BANK OF AMERICA, N.A.,** and **XYZ Corp.,** inclusive, are "consumer reporting agencies," as defined in 15 U.S.C. Section 168 1 (e).

149. Plaintiff is informed and believes and thereon alleges that commenting in or about February, 2007, Defendants **UNIVERSAL, BANK OF AMERICA, N.A.,** and **XYZ Corp.,** inclusive, violated the FCRA by willfully failing to comply with the FCRA in the following respects:

(a) by reporting information relating to Plaintiff's credit profile to consumer reporting agencies with actual knowledge of errors in the information provided;

---

Complaint                                                                           **Page 42** of 47

(b) by reporting information to credit reporting agencies relating to Plaintiff's credit profile when said Defendants knew or consciously avoided knowing that the reported information was inaccurate;

(c) by failing to inform Plaintiff in writing about the negative information which said Defendants had reported to credit reporting agencies.

150.    As a proximate result of the violations of the FCRA by Defendants **UNIVERSAL**, **BANK OF AMERICA, N.A.**, and **XYZ Corp.**, inclusive, Plaintiff is entitled to statutory damages of $1,000.00, pursuant to the FCRA, 15 U.S.C. Section 1681n.

151.    As a further proximate result of the violations of the FCRA by Defendants **UNIVERSAL**, **BANK OF AMERICA, N.A.**, and **XYZ Corp.**, inclusive, Plaintiff is entitled to punitive damages, as the court may allow, pursuant to the FCRA, 15 U. S. C. Section 168 1n.

152.    As a further proximate result of the violations of the FCRA by Defendants **UNIVERSAL**, **BANK OF AMERICA, N.A.**, and **XYZ Corp.**, inclusive, Plaintiff is entitled to reasonable attorney's fees, pursuant to the FCRA, 15 U.S.C. Section

### WHEREFORE, Plaintiff prays judgment as follows:
### ON THE FIRST AND THIRD CAUSES OF ACTION

1. For general damages according to proof;

2. For damages to Plaintiff's credit rating according to proof;

3. For damages equal to twice the amount of the finance charges paid by Plaintiff on the **UNIVERSAL** Loan according to proof;

4. For damages equal to the amount of all remaining indebtedness on the **UNIVERSAL** Loan according to proof;

5. For damages equal to the total amount paid by Plaintiff in connection with the **UNIVERSAL** Loan according to proof;

6. For statutory damages in the sum of $2,000.00;

7. For punitive damages;

8. For reasonable attorney's fees and costs;

9. For interest on the foregoing damages from and after May 22, 2006, in the maximum amount allowed by law.

### ON THE SECOND CAUSE OF ACTION

10. For general damages according to proof;

11. For damages to Plaintiff's credit rating according to proof;

12. For damages equal to twice the amount of the finance charges paid by Plaintiff on the **UNIVERSAL** Loan according to proof;

13. For damages equal to the amount of all remaining indebtedness on the **UNIVERSAL** Loan according to proof:,

14. For damages equal to the total amount paid by Plaintiff in connection with the **UNIVERSAL** Loan according to proof;

15. For statutory damages in the sum of $2,000.00;

16. For reasonable attorney's fees and costs;

17. For interest on the foregoing damages from and after May 22, 2006, in the maximum amount allowed by law.

### ON THE FOURTH CAUSE OF ACTION

18. For general damages according to proof;

19. For damages equal to twice the amount of the finance charges paid by Plaintiff on the **UNIVERSAL** Loan according to proof;

20. For damages equal to the amount of all remaining indebtedness on the **UNIVERSAL** Loan according to proof;

21. For damages equal to the total amount paid by Plaintiff on the **UNIVERSAL** Loan according to proof;

22. For statutory damages in the sum of $2,000.00;

23. For rescission of the **UNIVERSAL** Loan, including the **UNIVERSAL** Note and Mortgage;

24. For reasonable attorney's fees and costs;

25. For interest on the foregoing damages from and after May 22, 2006, in the maximum amount allowed by law.

## ON THE FIFTH CAUSE OF ACTION

26. For general damages according to proof;

27. For damages equal to three times the amount of all fees and charges for settlement services paid by Plaintiff on the **UNIVERSAL** Loan according to proof;

28. For statutory damages in the sum of $1,000.00;

29. For rescission of the **UNIVERSAL** Note and Mortgage;

30. For reasonable attorney's fees and costs;

31. For interest on the foregoing damages from and after May 22, 2006, in the maximum amount allowed by law.

## ON THE SIXTH CAUSE OF ACTION

32. For damages equal to three times the amount of all fees and charges for settlement services paid by Plaintiff on the **UNIVERSAL** Loan according to proof;

33. For damages equal to the amount of all fees and charges paid by Plaintiff on the **UNIVERSAL** Loan according to proof;

34. For statutory damages in sum of $2,500.00+;

35. For an order enjoining Defendants from foreclosing on Plaintiff's property;

36. For reasonable attorney's fees and costs;

37. For interest on the foregoing damages from and after May 22, 2006, in the maximum amount allowed by law.

## ON THE SEVENTH CAUSE OF ACTION

38. For an order of court quieting title to the Property to Plaintiff free of any purported adverse claims of Defendants;

## ON THE EIGHTH CAUSE OF ACTION

39. For an order of court enjoining Defendants from engaging in unlawful, unfair, and fraudulent business practices;

40. For an order of court requiring Defendants to make restitution to Plaintiff of all monies Defendants wrongfully obtained from Plaintiff;

41. For an order of court requiring Defendants to disgorge all ill-gotten revenues and/or profits obtained on the **UNIVERSAL** Loan;

42. For interest on the foregoing damages from and after May 22, 2006, in the maximum amount allowed by law.

## ON THE NINTH CAUSE OF ACTION

43.   For a temporary restraining order, preliminary injunction, and permanent injunction enjoining all Defendants, their agents, attorneys, and representatives, and all persons acting in concert or participating with them, from proceeding with a judicial foreclosure of Plaintiff's property, including the sale or attempted sale of Plaintiff's property;

## ON THE TENTH CAUSE OF ACTION

44. For statutory damages in sum of $1,000.00;

45. For punitive damages;

46. For reasonable attorney's fees and costs.

## ON ALL CAUSES OF ACTION

47. For costs of suit incurred herein; and

48. For such other and further relief as the Court may deem just and proper.

DATED: February 11, 2011

David A. Bellon, Esq.
The Law Firm of Jeffrey Galperin
*Attorneys for Plaintiff*
148-03A Hillside Avenue
Jamaica, New York

Tel.  (347) 561-3447
Fax. (914) 517-2712 (Not for Service)